IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-01652-MSK

ELEIA WARSON,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

## OPINION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 14**), the Defendant's Response (**# 15**), and the Plaintiff's Reply (**# 16**). For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

### I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

### II.    BACKGROUND

**A.**    **Procedural History**

Plaintiff Eleia Warson ("Ms. Warson") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying both her claim for disability insurance

benefits ("DIB") and application for supplemental security income ("SSI") under the Social Security Act. In August 2014, Ms. Warson filed for DIB, claiming she became disabled as of January 13, 2014. **(# 9-9 at 483)**. In October 2014, Ms. Warson filed for SSI. **(# 9-9 at 485)**. Following two hearings held on October 4, 2016 and March 22, 2017 before the same Administrative Law Judge ("ALJ"), Ms. Warson received an unfavorable decision in April 2017 ("Decision"). **(# 9-2 at 48-64)**. Ms. Warson appealed that Decision to the Appeals Council. However, on May 1, 2018, the Appeals Counsel denied her Request for Review. **(# 9-2 at 1-14)**. Ms. Warson now appeals the final agency action to this Court.

**B.    Factual Background**

The Court offers a brief summary of the facts here and elaborates as necessary in its discussion. Ms. Warson was born on February 10, 1969. **(# 9-2 at 62)**. She was 44 years old on her initially-alleged disability onset date in January 2014 and 48 years old at the time of the ALJ's Decision. **(# 9-2 at 62)**. She has a high school education and work history in physically demanding jobs such as: Quality Control Inspector; Laser Sintering Technician; Weigh Room Technician; Warehouse Associate; Senior Production Operator; and Machinist. **(# 9-10 at 547-558)**.

Ms. Warson alleges she became disabled on January 14, 2014 due to migraine headaches, confusion, fibromyalgia, irritable bowel syndrome, post-traumatic stress disorder ("PTSD"), restless leg syndrome, herniated lumbar discs, cervical stenosis, cubital tunnel syndrome, and degenerative joint disease. **(# 9-10 at 532)**. In October 2014, Ms. Warson had neck surgery, but she continued to have back and leg pain and stiffness. **(# 9-13 at 904)**. Thus, on May 13, 2015, she underwent low back surgery (bilateral L3-4, L-45 and L5 laminectomy with bilateral

foraminotomies L3-L4).  **(# 9-17 at 1010)**.  Due to surgical complications, Ms. Warson developed a MRSA infection, was subsequently hospitalized twice, and was on IV antibiotics until November 2015.  **(# 9-17 at 1010; # 10 at 1179-10-20 at 2270)**.  In December 2015, while Ms. Warson reported having nausea and stomach pain related to the antibiotics, her back pain had subsided, and the records indicated her "back is well healed."  **(# 10-12 at 1952-62)**.

Additionally, Ms. Warson's history of migraine headaches is well documented in the record, including treatment from various providers spanning several years.  **(# 9-10 at 572; # 9-11 at 631-635, 647-664, 678, 685; # 9-12 at 773; # 9-4 at 194; # 9-14 at 853-858; # 10-21 at 2328, 2331, 2338, 2340, 2352, 2356, 2360, 2376, 2406)**.  Further, at the March 2017 hearing before the ALJ, Ms. Warson testified to her continuing struggles with migraine headaches.  **(# 9-5 at 288-292)**.

In addition, the record reflects mental health impairments, including anxiety and depression and a diagnosis of PTSD, which is the focus of this appeal.  Ms. Warson's PTSD and related treatment is well documented in the record.  **(# 9-11 at 672; # 9-12 at 699, 707, 709, 712-713, 717-720, 722-724; # 9-14 at 864-868, 872, 899)**.  In March 2014, Ms. Warson sought treatment at Aspen Pointe for major depressive disorder and PTSD.  **(# 9-12 at 700-710)**.  An Aspen Pointe Clinical Assessment report revealed a diagnosis of PTSD as a result of sexual abuse Ms. Warson suffered when she was a child.  **(# 9-12 at 700)**.  Aspen Pointe providers reported PTSD as an Axis I clinical disorder.  **(# 9-11 at 672)**.  The records indicate that as a result of her PTSD, Ms. Warson experienced: nightmares; avoidance of stimuli; feelings of detachment; a sense of a foreshortened future; and anger outbursts.  **(# 9-12 at 709)**.  Ms. Warson participated in therapy and was prescribed various prescription medications in order to

3

manage her PTSD symptoms. **(# 9-12 at 700-724)**. On January 12, 2015, Karen Rice, M.D. diagnosed Ms. Warson with PTSD and major depressive disorder and found that her past childhood trauma was likely the cause of her depression and PTSD. **(# 9-14 at 868)**. Dr. Rice's treatment notes characterized Ms. Warson's PTSD as "unstable" and recommended "critical" treatment for her condition. **(# 9-14 at 865, 867)**. Dr. Rice recommended a treatment plan that included both therapy sessions and a prescription medication protocol. **(# 9-14 at 867)**.

In November 2014, state agency psychologist Irwin Matus, Ph.D. also assessed Ms. Warson's mental impairments and formulated his own Residual Functional Capacity ("RFC") assessment. Dr. Matus found Ms. Warson had the following limitations in sustained concentration and persistence: (1) not significantly limited in carrying out short and simple instructions; (2) moderately limited in carrying out detailed instructions; (3) moderately limited in the ability to maintain attention and concentration for extended periods; (4) moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) not significantly limited in sustaining an ordinary routine; (6) no limitation as to working in coordination or proximity to others without being distracted by them; (7) not significantly limited in making simple work-related decisions; (8) moderately limited in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (9) no limitations in social interactions. **(# 9-6 at 314-15)**. Dr. Matus noted Ms. Warson's PTSD, depression, confusion, and multiple medical conditions and concluded that her anxiety and mood are generally stable while she is

taking her medications. He opined that Ms. Warson could sustain lower end, moderately complex work tasks. **(# 9-6 at 315)**.

**C.    The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). SSI is available to an individual who is financially eligible, filed an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for a least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 215 (2002). The claimant must also prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2008).

To determine disability, the ALJ analyzed this case pursuant to the sequential five-step inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1998) (explaining the five steps in detail). At step one, the ALJ found Ms. Warson had not engaged in substantial gainful activity since her alleged onset date of January 13, 2014. **(# 9-2 at 53)**. At step two, the ALJ found Ms. Warson had the following severe impairments: lumbar and cervical degenerative disc disease, osteoarthritis in multiple joints, fibromyalgia, migraine, anxiety disorder, depressive disorder, and somatic disorder. **(# 9-2 at 54)**. While the ALJ went on to find Ms. Warson's MRSA infection to be "nonsevere" and

5

her elbow condition to not qualify as a medically determinable impairment, she made no mention of Ms. Warson's PTSD. **(# 9-2 at 54)**.

At step three, the ALJ found Ms. Warson's impairments did not meet or equal the severity of a listed impairment in the appendix of the regulations. In making this finding, the ALJ considered Ms. Warson's "mental impairments," finding she had no limitation in the activities of: "understanding, remembering, or applying information;" "interacting with others;" and "adapting or managing oneself." The ALJ also found Ms. Warson to have a moderate limitation in the activities of "concentrating, persisting, or maintaining pace."[1] **(# 9-2 at 55-56)**.

The ALJ then assessed Ms. Warson's RFC and determined that:

> [Ms. Warson] has the residual functional capacity to perform light work as defined in 20 § C.F.R. 404.1567(b) and 416.967(b) except she can occasionally climb, balance, stoop, kneel, crouch, and crawl. She has no manipulative, visual, or communicative limits. She should avoid more than occasional work at unprotected heights and more than occasional work in close proximity to dangerous moving machinery. She can understand and remember moderately complex instructions that can be learned and mastered within six months and that involve independent judgment, multiple steps, and abstract ideas. She can sustain concentration, persistence, and pace for these instructions over a typical workday and workweek. She can interact appropriately with others including supervisors. She can tolerate work changes, plan and set goals, travel, and recognize and avoid work hazards.

---

[1] The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations. These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

**(# 9-2 at 56)**.  The ALJ then found, at step four, that Ms. Warson was unable to perform any of her past relevant work.  **(# 9-2 at 62)**.  At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Ms. Warson's age, education, work experience, and RFC, she could perform the following "light, unskilled" jobs in the national economy: furniture rental consultant; cashier II; and marking clerk.  **(# 9-2 at 63)**.  The ALJ therefore found that Ms. Warson was not disabled as defined by the Social Security Act.

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).

Substantial evidence means evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  It requires more than a scintilla but less than a preponderance of the evidence.  *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Although a reviewing court must meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

7

In addition, if the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## IV. DISCUSSION

Ms. Warson raises several challenges to the Commissioner's Decision, all of which relate to the ALJ's failure to address Ms. Warson's diagnosis of PTSD at steps three, four, and five. Having considered these issues and the applicable law, the Court agrees that the ALJ erred in failing to consider the effects of Ms. Warson's PTSD in her RFC assessment and will focus on this argument, only. *See Watkins*, 350 F.3d at 1299 (declining to address remaining issues on appeal as "they may be affected by the ALJ's treatment of this case on remand."). Reversal and remand is necessary due to several errors of law at step four.

At step four in the disability analysis, the ALJ is required to asses a claimant's RFC based on all relevant evidence, medical (physical and mental) or otherwise. 20 C.F.R. § 1545. Initially, the impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC. The RFC finding requires a "more detailed assessment." Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Bales v. Colvin*, 576 F.App'x 792, 797 (10th Cir. 2014). However, the RFC must be assessed based on all of the relevant evidence and must account for "all of [the claimant's] medically determinable impairments ... including [claimant's] impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)–(2). In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts []

8

and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting Social Security Ruling 96-8P) (internal quotation marks omitted).

Here, the ALJ's RFC assessment contains no discussion of limitations associated with Ms. Warson's PTSD. Indeed, noticeably absent from any portion of the Decision is a mention of PTSD, whether severe or not, and how it affects Ms. Warson's ability to perform basic work activities. This is particularly troubling in light of the wealth of medical evidence documenting Ms. Warson's diagnosis of PTSD and the treatment sought for it. Although the Court acknowledges that the Decision contains discussion some of Ms. Warson's "severe" mental impairments such as "anxiety disorder, depressive disorder, and somatic disorder," **(# 9-2 at 54)** it is clear from the medical records that these conditions were different from PTSD. In fact, Dr. Matus, the state agency psychological consultant, listed PTSD, depression, confusion, and other medical conditions all as distinct bases for Ms. Warson's disability claim. **(# 9-6 at 315)**. Further, Dr. Rice's treatment notes list Ms. Warson's specific Axis I diagnoses as: PTSD, major depressive disorder, alcohol use disorder, stimulant use disorder, tobacco use disorder, cannabis use disorder, and intermittent explosive disorder. **(# 9-14 at 865)**. Dr. Rice further characterized Ms. Warson's PTSD as "unstable." **(# 9-14 at 865)**. Although the ALJ gave "great weight" to Dr. Matus' opinions **(# 9-2 at 61)**, she made no reference to Dr. Matus' findings that Ms. Warson suffered from PTSD. In addition, the ALJ inexplicably failed to mention Dr. Rice's treatment records, at all.

The record contains information relating to Ms. Warson's PTSD and how her symptoms specifically limited or interfered with her ability to work. For example, Ms. Warson reported "nightmares, avoidance of stimuli, feelings of detachment, sense of foreshortened future, [and]

9

anger outbursts." **(# 9-14 at 899)**.  Without any mention of PTSD or a discussion as to how it figured into the ALJ's assessment of Ms. Warson's mental limitations, the Court cannot conduct a meaningful review.  The Court has no idea whether the ALJ failed considered Ms. Warson's well documented PTSD, determined whether it was severe or not, or how it impacted her ability to understand, remember, applying information, interact with others, and adapt or manage herself oneself.  As a result, it does not appear that any accommodation in the RFC relates to or accounts for Ms. Warson's PTSD.

In response, the Commissioner asserts that Dr. Rice's PTSD diagnosis alone does not establish any functional limitations inconsistent with Dr. Matus' opinion.  *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (holding that the diagnosis of a condition does not automatically establish disability).  While it is true that Dr. Rice's diagnosis of Ms. Warson's PTSD does not in and of itself establish a disability, it does not relieve the ALJ of the duty to "consider the combined effect of all of [Ms. Warson's] medically determinable impairments, *whether severe or not severe*" based on all of the relevant medical and other evidence.  *Wells*, 727 F.3d at 1065 (emphasis in original); 20 C.F.R. § 404.1545(a)(2).

The Court finds the ALJ's failure to consider Ms. Warson's PTSD contravenes applicable legal standards and thus, the RFC assessment and the disability conclusions at step four and step five of the sequential analysis are not supported by substantial evidence.  Thus, the finding that Ms. Warson is not disabled is reversed, and the matter is remanded for reconsideration on steps four and five of the sequential analysis, applying the proper legal standards to the ALJ's formulation of Ms. Warson's RFC.  The Court expresses no opinion as to the ultimate determination of whether Ms. Warson is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2017 hearing date. Judgment shall enter in favor of Ms. Warson.

Dated this 21st day of August, 2019.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Senior United States District Judge